IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RIMINI STREET, INC.,<br><br>        Plaintiff,<br><br> v.<br><br>AXIS INSURANCE COMPANY; ZURICH AMERICAN INSURANCE COMPANY; CONTINENTAL CASUALTY COMPANY; ALLIANZ UNDERWRITERS INSURANCE COMPANY; and LLOYD'S TALBOT SYNDICATE 1183,<br><br>        Defendants. | Case No. _____<br><br>Judge:<br><br>Magistrate Judge:<br><br>**JURY TRIAL DEMAND** |

## COMPLAINT

Plaintiff Rimini Street, Inc. ("Rimini"), by and through its undersigned attorneys, for its complaint against Defendants AXIS Insurance Company ("AXIS"), Zurich American Insurance Company ("Zurich"), Continental Casualty Company ("CNA"), Allianz Underwriters Insurance Company ("Allianz"), and Lloyd's Talbot Syndicate 1183 ("Syndicate 1183") (AXIS, and together with Zurich, CNA, Allianz and Syndicate 1183, the "Excess Insurance Companies" or the "Defendants"), alleges and states as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory judgment arising from the Defendants' failure to acknowledge and/or their denial of their obligations to provide insurance coverage to Rimini in accordance with the terms of the insurance policies the Defendants sold to Rimini. Specifically, Rimini seeks a judgment declaring that the Excess Insurance Companies are obligated to defend Rimini and reimburse its defense costs in a proceeding commenced by Oracle USA Inc., Oracle

America, Inc. and Oracle International Corporation (collectively, "Oracle") to have Rimini held in contempt of a permanent injunction (the "Contempt Proceeding") upon exhaustion of the limits of the underlying primary policy to which the Excess Insurance Companies' policies follow form and which a court already has found has a duty to defend Rimini in the Contempt Proceeding.

## THE PARTIES

2.  Rimini is a Delaware corporation with its principal place of business in Las Vegas, Nevada. Rimini is in the business of providing software support to clients, including licensees of software owned by Oracle. Oracle also offers software support services to its licensees, and Rimini is Oracle's largest global competitor for support of Oracle software products. Rimini has a physical office, with employees, in Illinois and regularly conducts business in the state.

3.  Upon information and belief, Defendant AXIS is an Illinois corporation with its principal place of business in Alpharetta, Georgia. Upon information and belief, AXIS is licensed or authorized to do business and is doing business around the country, including in Illinois. It is licensed or authorized by various states, including Illinois, to issue insurance policies and it issues policies in this state. AXIS maintains an office in Chicago, Illinois at 111 South Wacker Drive, Suite 3500.

4.  Upon information and belief, Defendant Zurich is a New York corporation with its principal place of business in Schaumburg, Illinois. Upon information and belief, Zurich is licensed or authorized to do business and is doing business around the country, including in Illinois. It is licensed or authorized by various states, including Illinois, to issue insurance policies and it issues policies in this state.

5.  Upon information and belief, Defendant CNA is an Illinois corporation with its principal place of business in Chicago, Illinois. Upon information and belief, CNA is licensed or authorized to do business and is doing business around the country, including in Illinois. It is

licensed or authorized by various states, including Illinois, to issue insurance policies and it issues policies in this state.

6.  Upon information and belief, Defendant Allianz is an Illinois corporation with its principal place of business in Chicago, Illinois. Upon information and belief, Allianz is licensed or authorized to do business and is doing business around the country, including in Illinois. It is licensed or authorized by various states, including Illinois, to issue insurance policies and it issues policies in this state.

7.  Upon information and belief, Defendant Syndicate 1183 is an unincorporated foreign insurance syndicate with its principal place of business in England, United Kingdom. The sole member of Syndicate 1183 is Talbot 2002 Underwriting Capital Ltd. Talbot 2002 Underwriting Capital Ltd. is an English corporation with its principal place of business in London, England, United Kingdom.

## JURISDICTION AND VENUE

8.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000 exclusive of interests and costs. This Court has personal jurisdiction over Defendants AXIS, Zurich, CNA and Allianz because they are Illinois corporations and/or have their principal places of business in Illinois. This Court has personal jurisdiction over Syndicate 1183 and Talbot 2002 Underwriting Capital Ltd. because they purposefully directed conduct to Illinois through such actions as sharing in a $30 million layer of insurance with Defendants CNA and Allianz and delivering an insurance policy to Rimini's broker in Illinois.

9.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendants AXIS, Zurich, CNA, and Allianz are residents of this judicial district as defined by 28 U.S.C. § 1391(c)(2) and Talbot 2002 Underwriting Capital Ltd. may be sued in any judicial district pursuant to 28

U.S.C. § 1391(c)(3). Venue also is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this claim occurred in this judicial district.

## THE INSURANCE POLICIES

10. Non-party Indian Harbor Insurance Company ("Indian Harbor") sold Rimini a CyberRisk Connect Errors & Omissions ("E&O") Policy, No. MTP903421203, that provides Rimini with primary E&O insurance coverage for the November 14, 2019 to November 14, 2020 policy period (the "IH Policy"). A copy of the IH Policy is attached as **Exhibit A** and incorporated by reference.

11. Rimini is the named insured under the IH Policy. It has paid the premium in full in a timely fashion. It has complied with all terms and conditions of the IH Policy, including providing timely and proper notice of the Contempt Proceeding and participating in non-binding mediation of coverage disputes.

12. The IH Policy provides $10 million in coverage in excess of a $100,000 retention.

13. The IH Policy offers Rimini Third Party Liability Coverage, which provides:

> A. Third Party Liability Coverages
>
> [Indian Harbor] will pay on behalf of [Rimini] **claim expenses** and **damages** in excess of the applicable retention that [Rimini] is legally obligated to pay as a result of a **claim** first made against [Rimini] during the **policy period** or Extended Reporting Period (if applicable) alleging a:
>
> \*        \*        \*
>
> 1. Technology Products and Services
>
>    **technology wrongful act**;
>
> 2. Professional Services
>
>    **professional services wrongful act**;

4

      committed by the **Insured**, a **rogue employee**, an **outsourced provider**, or by a third party for whose **third party wrongful act** an **Insured** is legally responsible.

14. The IH Policy defines Damages broadly, in relevant part, as:

  K. Damages

    Compensatory damages resulting from a judgment, award or settlement agreement, including pre-judgment and post-judgment interest, which [Rimini] becomes legally obligated to pay as a result of a **claim**, and punitive, exemplary damages, and multiple damages, if the insuring of such damages is permitted under the laws and public policy of the jurisdiction under which this Policy is construed, which the **Insured** becomes legally obligated to pay as a result of a **claim**. Enforceability of punitive, exemplary damages and multiple damages will be governed by the applicable law that most favors affirmative coverage for such damages.

15. The IH Policy also requires Indian Harbor to investigate and defend claims that are alleged against Rimini even when those claims are groundless, false, or fraudulent for engaging in professional services and/or technology products or services that constitute wrongful acts.

16. In Section IV.C., the IH Policy in relevant part defines a "Claim" as:

    1. A written demand for monetary damages, services, or injunctive or other non-monetary relief;

    2. A civil proceeding for monetary damages, services, or injunctive or other non-monetary relief that is commenced by service of a complaint or similar pleading, including any appeal thereof;

17. Section IV.NN of the IH Policy defines "Professional Services Wrongful Act" to include any "act, error, omission, neglect, negligent misrepresentation, or breach of duty" in rendering or failing to render professional services.

18. Section IV.WW of the IH Policy defines a "Technology Wrongful Act" to include any "act, error, omission, neglect, negligent misrepresentation, or breach of duty" in rendering or failing to render technology services.

5

33303388.2

Case: 1:22-cv-00741 Document #: 1 Filed: 02/10/22 Page 6 of 17 PageID #:6

19. Section II of the IH Policy provides, among other things, coverage for defense against claims that allege such wrongful acts:

> A. Defense
>
> The Insurer has the right and duty to defend any claim under insuring agreement I.A. Third Party Liability Coverages made against an Insured even if the allegations in the claim are groundless, false or fraudulent …

20. Rimini also purchased a $50 million three layered excess E&O insurance program.

**First Layer Excess:  AXIS**

21. The first excess layer was issued by AXIS, policy no. P-001-000063817-02, providing Rimini with first layer excess coverage for the November 14, 2019 to November 14, 2020 policy period (the "AXIS Policy"). A copy of the AXIS Policy is attached as **Exhibit B** and incorporated by reference.

22. The AXIS Policy is subject to a $10 million limit in excess of the $10 million IH Policy.

23. The AXIS Policy states that it follows form to the IH Policy, including (but not limited to) the IH Policy's requirement to investigate and defend Rimini against claims, and states that it attaches once the full amount of the underlying limit of the IH Policy has been paid in accordance with the terms of the IH Policy by Indian Harbor, Rimini or someone on behalf of Rimini, in any combination:

> [T]his Policy shall provide insurance excess of the Underlying Insurance in conformance with all provisions of the Followed Policy. Liability shall attach to the insurer only after the full amount of the applicable Underlying Limit, and any applicable retention or deductible, has been paid, in legal currency, by the insurers of the Underlying Insurance, the Insureds, or others on behalf of the Insureds, in any combination, in accordance with the terms of the Underlying Insurance.

6
33303388.2

24. Additionally, the Declarations page states that the AXIS Policy covers defense costs and other "loss" beyond "damages":

> SUBJECT TO THE PROVISIONS OF THE FOLLOWED POLICY, THIS POLICY MAY PROVIDE COVERAGE FOR CLAIM EXPENSE / DEFENSE COSTS WITHIN THE LIMITS OF INSURANCE. THE LIMITS OF INSURANCE AVAILABLE TO PAY DAMAGES / LOSS WILL BE REDUCED AND MAY BE COMPLETELY EXHAUSTED BY PAYMENT OF CLAIM EXPENSE / DEFENSE COSTS AND THE INSURER SHALL NOT BE OBLIGATED TO PAY ANY COVERED AMOUNTS, INCLUDING CLAIM EXPENSE / DEFENSE COSTS, AFTER THE LIMITS OF INSURANCE HAVE BEEN EXHAUSTED.

**Second Layer Excess: Zurich**

25. The second excess layer was issued by Zurich, Policy No. EOC 0508100-02, providing Rimini with second layer excess coverage for the November 14, 2019 to November 14, 2020 policy period (the "Zurich Policy"). A copy of the Zurich Policy is attached as **Exhibit C** and incorporated by reference.

26. The Zurich Policy provides coverage up to a $10 million limit in excess of $20 million underlying limits.

27. Like the AXIS Policy, the Zurich Policy states that it follows form to the IH Policy, including (but not limited to) the IH Policy's requirement to defend Rimini against claims:

> I. INSURING CLAUSE – The Underwriter shall provide the Policyholder with insurance coverage during the Policy Period excess of the Underlying Insurance. . . . Coverage under this policy shall attach only after:
>
> A. all the Limits of Liability of the Underlying Insurance have been exhausted solely as a result of the actual payment of covered loss(es); or
>
> B. the Policyholder and/or any other insurer(s), entity, or individual on behalf of the Policyholder has paid up to the full limits of liability for such loss, and satisfied any deductible(s) or retention amount(s) of the Underlying Insurance on behalf of the insurer(s) of any Underlying Insurance, including coverage provided pursuant to a difference in conditions policy.

7

> Coverage under this policy shall then apply in conformance with and subject to the warranties, if permitted, limitations, conditions, provisions, and other terms of the Followed Policy, together with the warranties, if permitted, and limitations of any other Underlying Insurance. . . .

28. Indeed, the Declarations page states that the Zurich Policy covers, and its limits are reduced by, payment of defense costs:

> THE LIMIT OF LIABILITY SHALL BE REDUCED BY AMOUNTS INCURRED AS DEFENSE COSTS AND/OR CLAIMS EXPENSES, IF APPLICABLE.

**Third Layer Excess: CNA, Allianz and Syndicate 1183**

29. The third excess layer of coverage is split among three insurers, each providing $10 million of the $30 million layer, excess of $30 million.

30. One-third of the third excess layer is covered by a policy that was issued by Allianz, Policy No. U5F00044019, which provides $10 million in limits, excess of $30 million (the "Allianz Policy"). A copy of the Allianz Policy is attached as **Exhibit D** and incorporated by reference.

31. The Allianz Policy states that it follows form to the IH Policy, including (but not limited to) the IH Policy's requirement to investigate and defend Rimini against claims:

> 1. Insuring Agreement
>
> This Policy provides the Insureds with insurance excess of the Underlying Insurance for Claims first made against the Insured during the Policy Period or Discovery Period, if applicable, and reported to the Insurer pursuant to the provisions of this Policy. Except as specifically set forth in this Policy or in any written endorsement attached to this Policy, the coverage afforded by this Policy applies in conformance with: (1) the terms, conditions, warranties, exclusions and limitations of the Followed Policy as they existed on the inception date of this Policy[.]

32. Indeed, the Declarations page states that the Allianz Policy covers, and its limits are reduced by, payment of defense costs.

8

33303388.2

33. The General Conditions in the Allianz Policy state that the underlying limits can be exhausted by payment by the underlying insurance companies, Rimini or any other insurance companies:

> 2.1 Coverage under this Policy shall attach only after exhaustion of the limits of liability of the Underlying Insurance. The limits of liability of the Underlying Insurance shall be exhausted by payment, in legal currency, of Loss by the insurers of the Underlying Insurance, the Insureds or any DIC Insurer (if such DIC Insurer is sitting excess of this Policy). The Insurer shall recognize any contribution in legal currency by or on behalf of an Insured to such exhaustion of the limits of liability of the Underlying Insurance.
>
> 2.2 The Limit of Liability … shall be the maximum amount payable under this Policy for all covered Loss, including without limitation, defense costs.
>
> 2.3 If the limits of liability of the Underlying Insurance are reduced solely due to actual payment in legal currency of the Underlying Insurance, this Policy shall continue in force as excess insurance above the remaining amount of the limits of liability of the Underlying Insurance. If the limits of liability of the Underlying Insurance are exhausted as described in Section 2.1, this Policy shall continue in force as primary insurance, subject to any applicable retention.
>
> 2.4 This Policy shall pay only in the event of reduction or the exhaustion of limit of the Underlying Insurance as described above and shall not drop down for any reason including, but not limited to, the uncollectibility in whole or in part of the Underlying Insurance …

34. Another third of the third excess layer is covered by a policy that was issued by CNA, Policy No. 652179032, which provides $10 million in limits, excess of $30 million (the "CNA Policy"). A copy of the CNA Policy is attached as **Exhibit E** and incorporated by reference.

35. The CNA Policy states that it follows form to the IH Policy, including (but not limited to) the IH Policy's requirement to investigate and defend Rimini against claims, and states that it attaches once the full amount of limits of the IH Policy, AXIS Policy, and Zurich Policy

9

33303388.2

have been paid by or on behalf of the underlying insurance companies, Rimini or someone on behalf of Rimini:

> Section I
>
>> The Insurer shall provide coverage in accordance with all of the terms, conditions and limitations (including, but not limited to the exclusions and notice requirements) of the policy scheduled in Item 4.A. of the Declarations (hereafter "Followed Policy") except as otherwise set forth herein. Coverage hereunder shall attach only after all of the aggregate Limits of Liability, as set forth in Item 4. of the Declarations have been exhausted through payment of covered loss under all policies scheduled in Item 4. of the Declarations (hereafter "Underlying Insurance") by or on behalf of the insurers of such Underlying Insurance, or by or on behalf of the Insureds. The risk of uncollectibility of any Underlying Insurance (in whole or in part), whether because of financial impairment or insolvency of an underlying insurer or for any other reason, is expressly retained by the Insureds and is not insured by or assumed by the Insurer.

36. The last third of the third excess layer is covered by a policy that is subscribed to by Syndicate 1183, Policy No. B6044FIP2569650, which provides $10 million of limits, excess of $30 million (the "Syndicate 1183 Policy") (the Syndicate 1183 Policy, and together with the AXIS Policy, Zurich Policy, Allianz Policy and CNA Policy, the "Excess Policies", and together with the IH Policy, the "Insurance Policies"). A copy of the Syndicate 1183 Policy is attached as **Exhibit F** and incorporated by reference.

37. The Syndicate 1183 Policy states that it follows form to the IH Policy, including (but not limited to) the IH Policy's requirement to investigate and defend Rimini against claims:

> In consideration of the payment of the premium, the Insurer warrants that this Policy is subject to the same terms and conditions as set forth in the Primary Policy, and is subordinate to the Primary Policy except as otherwise stated herein or endorsed hereon.

38. The Syndicate 1183 Policy states that it attaches when the underlying insurance companies, Rimini, or others on behalf of Rimini pay, or have been held liable to pay, the full amount of the underlying limits:

> 5. Liability shall attach to the Insurer only after the underlying insurance, the Rimini Street, Inc., or others on behalf of the Rimini Street, Inc. shall have paid, or been held liable to pay the full amount of the underlying limit. In the event of such reduction or exhaustion of the underlying Limit of Liability under the Primary Policy and/or underlying insurance, this Policy shall:
>
> (a) in the event of reduction, pay the excess of the reduced underlying limit;
>
> (b) in the event of exhaustion, continue in force as primary insurance;
>
> provided always that in the latter event, this Policy shall only pay the excess of the retention as provided in the Primary Policy.

39. Rimini is the named insured under the Excess Policies. It has paid the premiums in full and in a timely fashion. It has complied with all terms and conditions of the Excess Policies, including providing timely and proper notice.

## THE CONTEMPT PROCEEDING

40. The Contempt Proceeding commenced on July 10, 2020, when Oracle filed a Motion for Order to Show Cause Why Rimini Street, Inc. Should Not Be Held in Contempt for violation of an injunction.

41. In January 2010, Oracle had sued Rimini for copyright infringement (the "Copyright Action"). Oracle sought a permanent injunction, which was entered in its original form on August 15, 2018. That injunction was narrowed on appeal by the U.S. Court of Appeals for the Ninth Circuit on August 16, 2019, which is when it took effect in its current form (the "Injunction").

42. Oracle alleges in the Contempt Proceeding that Rimini violated the Injunction and is in contempt of court by engaging in allegedly wrongful acts involving professional services,

technology services, and technology products. Rimini has asserted that these allegations are baseless and false.

43.     The allegations in the Contempt Proceeding arise from a support model for Oracle products that Rimini was using after 2014.

### INDIAN HARBOR'S NEVADA STATE COURT ACTION AND ITS COURT ORDERED DUTY TO DEFEND RIMINI IN CONNECTION WITH THE CONTEMPT PROCEEDING

44.     Rimini provided Indian Harbor and the Defendants with prompt and timely notice of the Contempt Proceeding.

45.     Rimini did so because the Contempt Proceeding alleged wrongful professional acts, including contempt of court, which fell squarely within the scope of the Insurance Policies' coverage for professional errors and omissions.

46.     By letter dated August 6, 2020, Indian Harbor denied all coverage outright for the Contempt Proceeding. In the letter, Indian Harbor relied principally on the contention that coverage was barred because of the Contempt Proceeding's purported relationship to the Copyright Action or, alternatively, to Oracle's counterclaims in a different action between Rimini and Oracle filed in 2014.

47.     On January 12, 2021, Rimini and Indian Harbor participated in mediation required by the terms of the IH Policy that ended unsuccessfully.

48.     Indian Harbor subsequently filed a declaratory judgment action in the Eighth Judicial District Court of Nevada, Clark County, entitled *Indian Harbor Insurance Company v. Rimini Street, Inc.*, Case No. A-21-827727-B, Dept. No. 11 (the "Nevada State Court Action"), seeking a judicial determination and declaration that (1) there is no coverage for the Contempt Proceeding because the claim is deemed made prior to the inception of the IH Policy (Count I);

12

(2) there is no coverage for the Contempt Proceeding because the claim does not meet the Retroactive Date Requirement of the Policy (Count II); and (3) there is no coverage for the Contempt Proceeding because the claim does not meet the Prior Knowledge Requirement (Count III).

49. On January 29, 2021, Rimini filed its Answer in the Nevada State Court Action which asserted the following counterclaims: (1) a First Cause of Action that seeks a declaration that Indian Harbor is obligated to defend Rimini in connection with the Contempt Proceeding; and (2) a Second Cause of Action that seeks compensatory damages for breach of contract on grounds that Indian Harbor breached the IH Policy by refusing to defend Rimini in the Contempt Proceeding; and also seeking an award of consequential damages, including reasonable attorneys' fees, special damages, pre-judgment interest and costs, and post-judgment interests and costs.

50. On August 13, 2021, the Nevada Court granted summary judgment in Rimini's favor by entering Findings of Fact and Conclusions of Law and Orders (the "August 13, 2021 Order"), granting Rimini's Partial Summary Judgment Motion and denying Indian Harbor's Countermotion for Summary Judgment. The Court determined, among other things, that "[t]he unusual Contempt [Proceeding] is a separate claim from Rimini I [Copyright Action] that is first made during the policy period of the [IH] Policy because some of the allegations in the Contempt [Proceeding] reflect that there is not a continuous nexus of facts, circumstances, acts, errors or omissions, but that there are new facts, issues, and time periods in the Contempt [Proceeding]. Indian Harbor therefore has a duty to defend Rimini Street in connection with the Contempt [Proceeding] pursuant to Section II.A of the Policy." A copy of the Nevada Court's August 13, 2021 Order is attached as **Exhibit G** and incorporated by reference.

51. The August 13, 2021 Order resolved both of Rimini's claims for declaratory judgment and for breach of contract as to the duty to defend and established Indian Harbor's duty to defend in connection with the Contempt Proceeding.

52. Pursuant to the August 13, 2021 Order, Indian Harbor has provided a defense and paid Rimini's past and ongoing defense costs incurred in connection with the Contempt Proceeding.

53. Defendants, as excess follow form insurance companies, are obligated to defend Rimini in the Contempt Proceeding as soon as their respective coverage layers are reached.

54. Indian Harbor has paid approximately $7.5 million to Rimini as reimbursement for the legal and expert costs that Rimini paid to defend itself against the Contempt Proceeding.

55. It is certain that Rimini's ongoing defense costs will soon exhaust the IH Policy limits of $10 million.

56. Rimini gave timely notice to the Defendants of its claim for excess coverage for the Contempt Proceeding and provided periodic updates of key developments, including as Rimini's defense costs neared the exhaustion of Indian Harbor's policy limits.

57. Despite the August 13, 2021 Order triggering the defense obligations provided under the primary IH Policy (to which the Excess Policies follow form), the Excess Insurance Companies, specifically including the first excess layer AXIS, have not acknowledged and/or have denied their coverage obligations for defense costs Rimini has incurred and will incur in connection with the Contempt Proceeding.

58. In order to avoid any gap in the defense coverage to which Rimini is entitled, Rimini seeks a declaration of Defendants' coverage obligations for the Contempt Proceeding.

33303388.2

## COUNT I

## DECLARATORY JUDGMENT

59. Rimini repeats and realleges each and every allegation contained in paragraphs 1 through 58 of the Complaint as if fully set forth herein.

60. Rimini has paid all premiums and has substantially performed any and all conditions under the Excess Policies that have not been waived by the Excess Insurance Companies.

61. The Excess Insurance Companies are obligated under the Excess Policies to (among other things) reimburse Rimini for amounts it incurred and will incur in the defense of the Contempt Proceeding upon exhaustion of the underlying policy limits.

62. The Excess Insurance Companies have failed to acknowledge and/or have denied their duties to defend Rimini in the Contempt Proceeding and continue not to acknowledge and/or deny their duties to defend Rimini under the Excess Policies, despite the fact that the Excess Insurance Companies have legal obligations to defend Rimini.

63. Rimini seeks a judicial determination of Rimini's rights and the Excess Insurance Companies' obligations with regard to an actual controversy arising out of the Excess Policies.

64. Pursuant to 28 U.S.C. § 2201, an actual, present and justiciable controversy exists between Rimini and the Excess Insurance Companies with respect to the Excess Insurance Companies' respective duties and obligations to Rimini under the Excess Policies. Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court is granted the power to determine and adjudicate the rights and obligations of the parties hereto.

65. The issuance of relief by this Court will resolve the existing controversy between Rimini and the Defendants relative to the construction of the Excess Policies and the parties' rights, status, and legal relations thereunder.

**WHEREFORE,** Rimini seeks entry of judgment in its favor and against Defendants:

(a) Finding and declaring that Defendants are obligated to defend Rimini against the Contempt Proceeding and to reimburse Rimini for the defense costs that it has incurred and will incur in the Contempt Proceeding upon exhaustion of Indian Harbor's policy limits, plus prejudgment interest;

(b) Awarding attorneys' fees, costs, and expenses incurred in connection with this action;

(c) Awarding all other just and proper relief.

Dated: February 10, 2022

By: /s/ Paul Walker-Bright

Paul Walker-Bright, Esq. (ARDC #6226315)
pwalkerbright@nge.com
**NEAL, GERBER & EISENBERG LLP**
2 North LaSalle Street
Suite 1700
Chicago, IL 60602
Telephone: (312) 269-8000
Facsimile: (312) 269-1747

and

Rhonda D. Orin, Esq. (applying for *pro hac vice admission*)
rorin@andersonkill.com
Daniel J. Healy, Esq. (applying for *pro hac vice admission*)
dhealy@andersonkill.com
Joseph Vila, Esq. (applying for *pro hac vice admission*)
jvila@andersonkill.com
**ANDERSON KILL**
1717 Pennsylvania Ave., NW
Suite 200
Washington, DC 20006
Telephone: (202) 416-6547
*Attorneys for Plaintiff,
Rimini Street, Inc.*

16

33303388.2

## **JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Rimini hereby demands a trial by jury as to all issues so triable.

By: /s/ Paul Walker-Bright

Paul Walker-Bright, Esq.
One of the Attorneys for Plaintiff
Rimini Street, Inc.
