IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Rimini Street, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 22 C 741 |
| | ) | |
| AXIS Insurance Company, Zurich American Insurance Company, Continental Casualty Company, Allianz Underwriters Insurance Company, and Lloyd's Talbot Syndicate 1183, | ) | |
| | ) | |
| Defendants. | ) | |

### Memorandum Opinion & Order

In this declaratory judgment action, Rimini Street, Inc. ("Rimini") seeks coverage from defendant insurers for a dispute with non-parties Oracle USA, Inc., Oracle America, Inc., and Oracle International Corporation (collectively, "Oracle"). AXIS Insurance Company ("AXIS"), Zurich American Insurance Company ("Zurich"), Continental Casualty Company ("Continental"), and Allianz Underwriters Insurance Company ("Allianz"), each seek to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Zurich, Continental, and Allianz make similar arguments for dismissal, so I address their motions together; AXIS's arguments are discussed separately. For the following reasons, Zurich's,

Continental's, and Allianz's motions are granted and AXIS's motion is denied. Rimini's motions to strike are denied as moot.

I.

Rimini purchased an errors & omissions (E&O) insurance policy from non-party Indian Harbor Insurance Company ("Indian Harbor") for the period of November 14, 2019, to November 14, 2020 (the "Primary Policy"). Complaint, Dkt. No. 1 ¶ 10. In addition, Rimini purchased excess insurance policies for the same period from defendants (the "Excess Policies"). *Id.* ¶¶ 21, 25, 30, 34, 36. In short, if the policy limit of the Primary Policy was met, then the Excess Policies kicked in, in an order not important here. Each of the Excess Policies "followed form" to the Primary Policy, meaning that each conformed with the provisions of the Primary Policy, other than specific changes, or "endorsements," contained in each Excess Policy. The Excess Policies, following form to the Primary Policy, are claims-made policies, only covering claims made during the policy period. *See id.* ¶ 13.

In January 2010, Oracle sued Rimini for copyright infringement in federal district court (the "Copyright Action"). *Id.* ¶ 41. A permanent injunction was entered in that case on August 15, 2018, which was modified on appeal on August 16, 2019. *Id.* On July 10, 2020, Oracle filed a motion for order to show cause why Rimini should not be held in contempt for violation of that injunction (the "Contempt Motion"). *Id.* ¶¶ 40, 42. It is for the

2

Contempt Motion and the attendant proceedings that Rimini seeks coverage from defendants.

Rimini initially sought coverage under the Primary Policy, but Indian Harbor denied coverage. After unsuccessful mediation, Indian Harbor filed a declaratory judgment action in Nevada state court, seeking a determination that it owed nothing under the Primary Policy. *Id.* ¶¶ 47–48. Rimini asserted a counterclaim for declaratory judgment in its favor. *Id.* ¶ 49. The Nevada state court granted summary judgment in Rimini's favor, finding that Indian Harbor owed coverage to Rimini under the Primary Policy. *Id.* ¶ 50.

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Documents attached to the complaint, which here includes the various insurance policies, are considered part of the pleading. Fed. R. Civ. P. 10(c). Furthermore, I may consider the Contempt Motion even though it is not attached to the complaint because it is "referred to in the plaintiff's complaint and [is] central to [the] claim." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (citation and internal quotation marks omitted).[1]

---

[1] Zurich, Continental, and Allianz ask that I also consider materials filed on the docket in the Copyright Action, which Rimini

3

As a federal court sitting in diversity jurisdiction, I must apply the choice-of-law rules of the state in which I sit. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). "Under Illinois choice-of-law rules, forum law is applied unless an actual conflict with another state's law is shown, or the parties agree that forum law does not apply." *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021) (citations and quotation marks omitted). Finding no conflict, I refer to both Illinois and Nevada law in this order.

II.

Under both Illinois and Nevada law, whether there is a duty to defend depends upon a comparison of the language in the policy with the allegations contained in the underlying complaint (here, the Contempt Motion). *Crum & Forster Managers Corp. v. Resol. Tr. Corp.*, 620 N.E.2d 1073, 1079 (Ill. 1993); *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1158 (Nev. 2004). Dismissal is appropriate if this comparison reveals no duty to defend. *See Bancorpsouth, Inc. v. Fed. Ins. Co.*, 873 F.3d 582, 584 (7th Cir. 2017) (affirming Rule 12(b)(6) dismissal of complaint seeking insurance coverage because exclusion barred coverage).

---

opposes both in its response briefs and separately filed motions to strike. I find it unnecessary to consider these materials to decide the motion, so I need not resolve this disagreement. Accordingly, I will deny as moot Rimini's motions to strike.

4

Zurich, Continental, and Allianz argue that an exclusion in each of their Excess Policies bars any possibility of coverage (the "Prior or Pending Exclusions").[2] The wording of the exclusion differs slightly among the policies, but the effect is the same. The Zurich policy states:

> [Zurich] shall not be liable for loss on account of, based upon, arising out of, or attributable to any written demand, suit or proceeding pending, or order, decree or judgment entered against any insured on or prior to 11/14/2017 or the same or substantially the same wrongful act or interrelated wrongful acts, fact, circumstance or situation underlying or alleged therein.

Dkt. No. 1-3 at 15. The Continental Policy states:

> [Continental] shall not be liable to pay any loss under this Policy in connection with any claim made against any Insured based upon or arising out of or constituting any civil, criminal, administrative or regulatory or alternative dispute resolution proceeding or investigation against any of the Insureds which was pending on or prior to 11/14/2019 or the same or essentially the same fact, circumstance, situation, transaction or event underlying or alleged in such proceeding or investigation.

Dkt. No. 1-5 at 5. Similarly, the Allianz Policy states:

> [Allianz] shall not be liable for any Loss arising out of, based upon or attributable to:
>
> A. any demand, suit, proceeding or investigation occurring prior to, or pending as of, November 14, 2019; or
>
> B. any Wrongful Act which gave rise to such prior or pending demand, suit, proceeding or investigation or any Interrelated Wrongful Acts thereto.

---

[2] As Rimini acknowledges, the Primary Policy does not contain such an exclusion, so the Nevada state court's decision is irrelevant to consideration of this exclusion.

5

Dkt. No. 1-4 at 11.

Thus, the Prior or Pending Exclusions bar coverage for claims arising out of prior or pending actions as well as claims arising out of the facts underlying those actions. Yet in its response brief, Rimini focuses only on the latter prong, arguing that the facts underlying the Contempt Motion differ from those in the Copyright Action. Regardless of whether that is true, the exclusions by their terms also bar coverage for claims arising out of prior actions, even if the factual milieu differs.

As a starting point in determining whether the Contempt Motion arises out of or is based upon the Copyright Action, I note "there is no such thing as an independent cause of action for civil contempt"; "[i]nstead, '[c]ivil contempt proceedings are considered to be a part of the action from which they stem,' their purpose being to secure compliance with a prior court order." *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 459 (7th Cir. 1993) (quoting 4 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1017 (1987); additional citations and quotation marks omitted). This principle suggests the Contempt Motion is part of the Copyright Action. Indeed, Rimini acknowledges that the case caption used for the Contempt Motion is the same as that used for the Copyright Action. *See, e.g.*, Dkt. No. 64 at 5 n.1.

The terms of the Prior or Pending Exclusions support the same conclusion. When the words of an insurance policy are unambiguous,

courts will afford them their plain, ordinary meaning. *See Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005); *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 672 (Nev. 2011). As used here, the terms "based upon" and "arising out of" are unambiguous. *Accord Westfield Nat'l Ins. Co. v. Long*, 811 N.E.2d 776, 780 (Ill. App. Ct. 2004) (holding that "the phrase 'arising out of' when used in an exclusionary clause of an insurance policy . . . is not ambiguous" (citation omitted)); *Capitol Indem. Corp. v. Blazer*, 51 F. Supp. 2d 1080, 1087–88 (D. Nev. 1999) (applying Nevada law to find term "arising out of" in policy exclusion unambiguous). Plaintiff's claim arises out of the Copyright Action because it originates, or comes into being from that action. *See Arise*, *Black's Law Dictionary* (11th ed. 2019) (defining "arise" as "[t]o originate, to stem (from)," "[t]o result (from)"). The Contempt Motion stems from the underlying Copyright Action; if not for the Copyright Action, Oracle could never have filed the Contempt Motion against Rimini, so there would be nothing for Rimini to seek coverage for. *See Am. Equine Ins. Grp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 327 F. Supp. 2d 932, 934 (N.D. Ill. 2004) (finding prior or pending exclusion applied because "[i]f not for the lawsuit and subsequent settlement between [insurer] and [third-party], [policyholder's] claim would not exist").

7

I am not persuaded by Rimini's argument that determining whether the Prior or Pending Exclusions apply requires the same analysis as determining whether the claims in the Contempt Motion "relate back" to those in the Copyright Action. For one thing, this would render the Prior or Pending Exclusions superfluous. *See Old Second Nat'l Bank v. Ind. Ins. Co.*, 29 N.E.3d 1168, 1175 (Ill. App. Ct. 2015) ("[W]e will not interpret an insurance policy in such a way that any of its terms are rendered meaningless or superfluous." (citing *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1023 (Ill. 2010)). Additionally, while the analysis for one prong of the Prior or Pending Exclusions--considering whether the present claim arises from or is based on the same wrongful act or circumstances as a prior claim--may be similar to the "relation back" analysis, the exclusions in the Excess Policies more broadly bar coverage for claims arising out of or based on prior litigation or other proceedings. The cases cited by Rimini in support of this argument required courts to compare different actions, where here the dispute is over a motion filed as part of an action. *See Endurance Am. Specialty Ins. Co. v. WFP Sec. Corp.*, No. 11cv2611 JAH (KSC), 2012 WL 7808097, at *2, *9 (S.D. Cal. Sept. 28, 2012) (holding prior or pending exclusion did not apply where insurer had defended policyholder in arbitration brought by an individual and a separate arbitration--which included some claims related to the first arbitration and some that were "wholly unrelated"--was

8

brought by a different individual); *Lehigh Valley Health Network v. Exec. Risk Indem., Inc.*, No. CIV. A.1999-CV-5916, 2001 WL 21505, at *2-3, *8-9 (E.D. Pa. Jan. 10, 2001) (declining to apply prior or pending exclusion where the two claims were separate actions brought by separate plaintiffs).

I also reject the notion that determining whether the Prior or Pending Exclusions apply is inappropriate at the motion to dismiss stage. Rimini cites *David v. Am. Home Assurance Co.*, No. 95 Civ. 10290 (LAP), 1997 WL 160367, at *3 (S.D.N.Y. Apr. 3, 1997), for this proposition, but that case involved a policyholder seeking coverage for suits (*Ellis* and *Kayne*) that the insurer argued were substantially similar to a previous suit, *Gerber*. The court ruled that whether the facts of these cases were similar enough could not be decided on a motion to dismiss because it would require comparing the facts of *Ellis* and *Kayne* to those of *Gerber*. *Id.* Here, the claim for which Rimini seeks coverage is part of a civil suit. Also distinguishable is *Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303 (3d Cir. 1994). In that case, discovery was allowed to determine whether a policyholder had a reasonable expectation of coverage after a prior or pending exclusion was amended. *Id.* at 1312. The court held, however, that the exclusion clearly barred coverage if the insured was aware of the change in the exclusion language and the insurer had not represented that

the amendment would not change the scope of coverage. *Id.* Those circumstances are absent here.

### III.

In its motion to dismiss, AXIS first argues that this suit is not ripe because the $10 million Primary Policy limit has not yet been exhausted. Declaratory judgment actions, like any suit in federal court, requires an "actual case or controversy." *See Geisha, LLC v. Tuccillo*, 525 F. Supp. 2d 1002, 1009–10 (N.D. Ill. 2007). The question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (footnote omitted) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). In the context of excess insurance policies, "courts look to see whether the events that trigger the excess policy's coverage are likely to occur." *Astellas US Holding, Inc. v. Starr Indem. & Liab. Co.*, No. 17 CV 8220, 2018 WL 2431969, at *6 (N.D. Ill. May 30, 2018) (citing *Cushman & Wakefield, Inc. v. Ill. Nat'l Ins. Co.*, No. 14 C 8725, 2015 WL 2259647, at *4 (N.D. Ill. May 11, 2015)). Taking the allegations in the complaint as true, it is plausible that the Primary Policy will be exhausted. Indian Harbor has already paid out approximately $7.5 million of its $10 million limit, Complaint

10

¶ 54, and it is allegedly "certain that Rimini's ongoing defense costs will soon exhaust the [Primary Policy] limits of $10 million," *id.* ¶ 55. Accordingly, AXIS's argument fails.

AXIS also argues that, because its Excess Policy follows form to the Primary Policy, Rimini was required to comply with the alternative dispute resolution condition in the Primary Policy, but did not. Rimini asserts that it was not required to mediate with AXIS and that, in any event, the parties already engaged in mediation. AXIS does not dispute that mediation occurred but contends that Rimini failed to "undertake reasonable efforts" to provide information AXIS requested prior to mediation, despite Rimini's assurance it would do so. *See* Dkt. No. 32 ¶ 5 ("Rimini acknowledges that AXIS has requested that Rimini provide certain information for review solely for purposes of such mediation and will undertake reasonable efforts to provide it.").

However, I cannot find that any mediation requirement--and, again, Rimini disputes there was one with respect to AXIS--was left unmet here. The parties previously obtained a 120-day stay to mediate, *see* Dkt. No. 33, which was extended an additional 14 days, *see* Dkt. No. 55. Rimini claims, and AXIS does not dispute, that mediation occurred on September 30, 2022. Under the terms of the Primary Policy's alternative dispute resolution provision, should they apply, "[i]n the event . . . non-binding mediation does not result in a settlement of the dispute, either party has the right:

11

1. To commence a judicial proceeding . . . ." Dkt. No. 1-1 at 41-42 ¶ K. That appears to be what happened here.

Additionally, in describing the information it sought and failed to obtain from Rimini, AXIS states that Rimini "has refused to provide even a single piece of paper related to its alleged satisfaction of the retention or alleged erosion of underlying insurance, let alone exhaustion of the full $10,000,000 limit." Dkt. No. 82 at 7. As explained above, I must accept as true that the Primary Policy limit is likely to be exhausted.

IV.

For the foregoing reasons, Zurich's, Continental's, and Allianz's motions to dismiss are granted; Rimini's motions to strike are denied as moot; and AXIS's motion to dismiss is denied.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: December 7, 2022